# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JAMES GARRETT,

                Plaintiff,

   v.

C/O RICHHI,

                Defendant.

_____/

CASE NO. 1:03-CV-05892-AWI-SMS-P

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT BE GRANTED
IN PART AND DENIED IN PART

(Doc. 63)

I.     <u>Defendant's Motion for Summary Judgment</u>

     A.     <u>Procedural History</u>

     Plaintiff James Garrett ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's second amended complaint, filed December 11, 2003, against defendant Ricci[1] ("defendant") for violating the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  On February 6, 2006, defendant filed a motion for summary judgment. (Docs. 63-65.) Plaintiff filed an opposition on March 31, 2006, and defendant filed a reply on April 11, 2006.[2] (Docs. 72, 73, 77.)

/// 

///

---

[1] Identified as defendant Richhi in the second amended complaint.

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on April 30, 2004.  <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).  (Doc. 17.)

1         B.     <u>Legal Standard</u>

2         Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

3 as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

4 Civ. P. 56(c).  Under summary judgment practice, the moving party

5           [A]lways bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the

6           pleadings, depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any," which it believes

7           demonstrate the absence of a genuine issue of material fact.

8 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

9 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

10 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

11 <u>Id</u>.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

12 motion, against a party who fails to make a showing sufficient to establish the existence of an

13 element essential to that party's case, and on which that party will bear the burden of proof at trial.

14 <u>Id</u>. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

15 case necessarily renders all other facts immaterial."  <u>Id</u>.  In such a circumstance, summary judgment

16 should be granted, "so long as whatever is before the district court demonstrates that the standard

17 for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id</u>. at 323.

18         If the moving party meets its initial responsibility, the burden then shifts to the opposing

19 party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec.</u>

20 <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the existence

21 of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

22 required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

23 material, in support of its contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586

24 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

25 might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477

26 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630

27 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

28 ///

1    return a verdict for the nonmoving party. <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436
2    (9th Cir. 1987).

3         In the endeavor to establish the existence of a factual dispute, the opposing party need not
4    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
5    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
6    trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
7    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
8    <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
9    amendments).

10        In resolving the summary judgment motion, the court examines the pleadings, depositions,
11   answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).
12   The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable
13   inferences that may be drawn from the facts placed before the Court must be drawn in favor of the
14   opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655
15   (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing
16   party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards</u>
17   <u>v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th
18   Cir. 1987).

19        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show
20   that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole
21   could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
22   trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

23        C.    <u>Undisputed Facts</u>
24   1.    Plaintiff was received at North Kern State Prison on March 12, 2002.
25   2.    On March 15, 2002, plaintiff was reassigned to cell 126, upper bunk.
26   3.    On April 23, 2002, plaintiff was reassigned to cell 116, lower bunk.
27   ///
28   ///

4.    Defendant was not responsible for assigning the new inmate (plaintiff's new cellmate) to the lower bunk.  Cell and bed assignments for new inmates are made by staff in Receiving and Release.

5.    Inmates commonly move their mattresses off the upper bunks and sleep on the floor, especially when the weather is hot.  The bunks are constructed of steel plates, so sleeping on the concrete floor is no more uncomfortable than sleeping on the bunk.

6.    Defendant informed his supervisor, who agreed that the new inmate had to be in the lower bunk that night because of the transfer order.

7.    Defendant's shift was ending at 10:00 p.m.

8.    Information provided by the Los Angeles County Sheriff indicated that plaintiff had been given medication for a seizure disorder while incarcerated in the county jail.

9.    Doctors at North Kern State Prison noted plaintiff's history of seizures and prescribed anti-seizure medication for him.

10.   A medical order for assignment to a lower bunk on a lower tier was not issued until May 7, 2002.

11.   At approximately 6:00 a.m., plaintiff was found on his cell floor, shaking and slow to respond to orders.  Plaintiff was taken to the clinic and then sent to the prison emergency room.  In the emergency room plaintiff was alert, oriented, and had no neurological deficit.[3]

        D.      Eighth Amendment Claim Arising from Conditions of Confinement

        In his second amended complaint, plaintiff alleges that on April 23, 2002, he had a seizure and fell from the upper bunk.  (Doc. 12, 2nd Amend. Comp., § IV.)  Plaintiff alleges that defendant moved him to an upper bunk despite knowing he was registered with medical staff as an inmate who suffered seizures and received medication for his condition in the morning and in the evening.  (Id.)  Plaintiff alleges that defendant was advised by a medical technical assistant to move plaintiff back to a lower bunk, but defendant ignored the advice.  (Id.)

_____

        [3] Plaintiff disputes that he was alert because he urinated on himself.  Urinating on oneself does not preclude alertness.  Therefore, the court shall treat this fact as undisputed.  Regardless, whether or not plaintiff was alert in the emergency room does not alter the analysis set forth in this Findings and Recommendations.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In his motion, defendant contends that he is entitled to judgment as a matter of law on plaintiff's claim against him because he did not act with deliberate indifference and his actions were not the proximate cause of plaintiff's fall. In support of his motion, defendant offers the following evidence.

Plaintiff was received at North Kern State Prison on March 12, 2002. (Undisputed Fact 1.) Information provided by the Los Angeles County Sheriff indicated that plaintiff had been given

5

1    medication for a seizure disorder while incarcerated in the county jail, and doctors at North Kern

2    State Prison noted plaintiff's history of seizures and prescribed anti-seizure medication for him.

3    (U.F. 8, 9.) However, a medical order for assignment to a lower bunk on a lower tier was not issued

4    until May 7, 2002, after the fall occurred. (U.F. 10.)

5        Plaintiff was reassigned from a lower bunk to an upper bunk on March 15, 2002. (U.F. 2.)

6    Defendant contends that one evening in April of 2002 at approximately 9:15 p.m., he escorted a

7    newly received inmate who had a transfer order for placement in a lower bunk to plaintiff's cell.

8    (Doc. 65, Def. Ex. B, Ricci Dec., ¶¶4, 6.) Defendant contends that the new inmate weighed about

9    three-hundred pounds and appeared to be incapable of walking up stairs or getting into the upper

10   bunk. (Id., ¶8.) Defendant contends that when he approached the cell, he informed plaintiff that the

11   new inmate was assigned to the lower bunk, and plaintiff became argumentative and said that he

12   could not sleep in the upper bunk because he had a seizure disorder. (Id., ¶9.) Defendant contends

13   that he asked if plaintiff had a medical chrono (order) for placement in a lower bunk. (Id., ¶10.)

14   Plaintiff did not have an order requiring his assignment in a lower bunk, and defendant contends that

15   he told plaintiff it was too late to verify whether or not plaintiff should be in a lower bunk and that

16   plaintiff could sleep on the floor and get the matter straightened out the next day. (Id.) Inmates

17   commonly move their mattresses off the upper bunks and sleep on the floor, especially when the

18   weather is hot, and the bunks are constructed of steel plates, so sleeping on the concrete floor is no

19   more uncomfortable than sleeping on the bunk. (U.F. 5.)

20       Defendant contends that because plaintiff argued with him so vehemently, he assumed that

21   plaintiff was assigned to the lower bunk, and he therefore informed his supervisor, who agreed that

22   the new inmate had to be in the lower bunk that night because of the transfer order. (Ricci Dec.,

23   ¶12.) Defendant was not responsible for assigning the new inmate to the lower bunk. (U.F. 4.) Cell

24   and bed assignments for new inmates are made by staff in Receiving and Release. (Id.) Defendant

25   contends he does not have the authority to reassign inmates to different cells or beds without the

26   authorization of his supervisor, and that his supervisor indicated that the officers the next day on

27   second watch could straighten out any problems with plaintiff being assigned to an upper bunk.

28   (Ricci Dec., 12.) Defendant contends that it was important to place the new inmate in his assigned

cell as quickly as possible, because it was time for the mandatory evening count, which is conducted to account for all inmates in the prison, and defendant's shift was ending at 10:00 p.m. (Id., ¶5.) Defendant contends that he did not speak to a medical technical assistant about plaintiff on that evening or at any other time. (Id., ¶14.)

Defendant contends that although plaintiff was assigned to the upper bunk, which is consistent with the assignment of the new inmate to the lower bunk, it is possible that plaintiff was still using the lower bunk, as it is not uncommon for inmates to intimidate their cell partners into surrendering the lower bunk. (Id., ¶13.)

At approximately 6:00 a.m. on April 23, 2002, plaintiff was found on his cell floor, shaking and slow to respond to orders. (U.F. 11.) Plaintiff was taken to the clinic and then sent to the prison emergency room. (Id.) In the emergency room plaintiff was alert, oriented, and had no neurological deficit, id., and defendant contends plaintiff had equal hand grips. (Def. Ex., p. 20.) On that date, plaintiff was reassigned to a lower bunk in a different cell. (U.F. 3.)

Defendant concedes for the purposes of this motion that placement of an inmate with a seizure disorder in an upper bunk creates an objective risk of harm. (Doc. 64, Def. Memo., 5:5-7.) However, defendant argues he did not act with deliberate indifference because he did not ignore plaintiff's concerns and consulted with his supervisor. Defendant argues that given the late time and the need to place the new inmate quickly, the new inmate's transfer order for placement in a lower bunk and defendant's observation of the new inmate's condition, plaintiff's lack of possession of a medical order requiring a lower bunk, and plaintiff's ability to move his mattress to the floor, he acted reasonably in instructing plaintiff to sleep on the floor for one night until the housing assignment could be straightened out. In addition, defendant argues that he did not require plaintiff to actually sleep on the upper bunk and instead instructed him to sleep on the floor for one night because he had no other alternative available at the time. Defendant argues that plaintiff's decision to sleep on the upper bunk actually caused plaintiff to fall.

///

1       In his opposition,[4] plaintiff disputes that the new inmate weighed three-hundred pounds and

2 that defendant spoke to him about moving someone else into his cell. (Doc. 73, Garrett Dec., ¶¶10,

3 11; Doc. 72, Opp., Facts 4, 5.)  Plaintiff denies that he and defendant had a conversion about a

4 chrono for lower bunk placement, denies engaging in a confrontation with defendant, and denies that

5 defendant told him to sleep on the floor or that the bunk assignments could be straightened out the

6 next day. (Garrett Dec., ¶¶11, 12, 17; Opp., Facts 4, 7, 9, 10, 11.)  Plaintiff denies that it was late

7 in the evening and defendant was in a rush when the  new inmate arrived. (Garrett Dec., ¶¶12, 14;

8 Opp., Facts 12, 14.)  Plaintiff contends that the new inmate arrived right after evening meal. (Opp.,

9 Fact 14.)  Plaintiff contends that defendant had the ability to put in a bed change or transfer out of

10 the unit. (Garrett Dec., ¶9; Opp., Fact 13.)  Plaintiff contends that he stayed on the upper bunk for

11 approximately two weeks and defendant Ricci, who was the correctional office in charge, ignored

12 his complaints during that time.  (Garrett Dec., ¶12; Opp., Fact 11 & p. 9, lns. 16-19.)  Plaintiff

13 contends that defendant completed other required lower bunk moves but failed to move plaintiff.

14 (Garrett Dec., ¶13; Opp., p. 9, lns. 19-21.)  Plaintiff also contends that defendant spoke with a couple

15 of medical technical assistants within the next few days while they were delivering plaintiff's

16 medication regarding plaintiff's bunk assignment,  and defendant spoke to a nurse regarding moving

17 plaintiff to a bottom bunk. (Garrett Dec., ¶16; Opp., Fact 15.)  Plaintiff denies intimidating his

18 cellmate into giving him the lower bunk. (Garrett Dec., ¶15; Opp., Fact16.)

19       The evidence of plaintiff, as the opposing party, is to be believed, <u>Anderson</u>, 477 U.S. at 255,

20 and all reasonable inferences that may be drawn from the facts placed before the court must be drawn

21 in favor of plaintiff. <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. at

22 655 (per curiam)).  There is no dispute that assigning an inmate who suffers from seizures to an

23 upper bunk creates a risk of harm or that plaintiff was on anti-seizure medication.  The parties agree

24 that plaintiff did not have a medical chrono for a lower bunk until May 7, 2006, and that the new

25 inmate did have a medical chrono for a lower bunk.  Plaintiff also failed to dispute that inmates

26 commonly move their mattresses off the upper bunks and sleep on the floor, especially when the

27

28       [4] The court notes that in his opposition, plaintiff argues that defendant is not entitled to qualified immunity. However, defendant did not raise the defense of qualified immunity in his motion.

weather is hot, and the bunks are constructed of steel plates, so sleeping on the concrete floor is no more uncomfortable than sleeping on the bunk.

However, accepting as true the version of events set forth in plaintiff's declaration and opposition, Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998), defendant did not tell plaintiff to move his mattress to the floor for the night and address the situation the next day.  In addition, defendant had the ability to effect a bed move.[5]  Further, and of most significance, for the next two weeks approximately, plaintiff complained about his bunk assignment to defendant, who was the correctional officer in charge, to no avail.  Although defendant completed other lower bunk moves, plaintiff was not one of the inmates moved.  Thereafter, plaintiff suffered a seizure and fell from the upper bunk.  Plaintiff was found at approximately 6:00 a.m., at which time he was taken to the medical clinic and then the emergency room.

The court finds that plaintiff has set forth evidence sufficient to raise a triable issue of fact over whether defendant knew of and disregarded a substantial risk of harm to plaintiff over a period of approximately two weeks when he ignored plaintiff's complaints about his upper bunk assignment during that time.  Accordingly, because there are material issues of fact in dispute in this matter, defendant is not entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim against him.

E.      Equal Protection Claim Arising from Discrimination Based on Religion

In his second amended complaint, plaintiff alleges that defendant seemed to hate him because of his Muslim religious beliefs.  (2nd Amend. Comp., § IV.)  Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose.  See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  A claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment

---

[5] Although defendant asserts in his reply that plaintiff has offered no admissible evidence that he had the authority to effect a change, plaintiff attests to the fact in his declaration and defendant has made no showing that plaintiff does not possess personal knowledge sufficient to make this statement in his declaration.  Absent any such showing, the court declines to conclude that an inmate would *not* know which prison employees have the power to take which actions.

1   requires a plaintiff must show that defendants acted with intentional discrimination against plaintiff

2   or against a class of inmates which included plaintiff.  Village of Willowbrook v. Olech, 528 U.S.

3   562, 564 (2000) (equal protection claims may be brought by a "class of one"); Reese v. Jefferson

4   Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194

5   (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe

6   v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

7           In his motion, defendant contends that prior to his confrontation with plaintiff over moving

8   a new inmate into the lower bunk, defendant did not know plaintiff, cannot recall any other

9   encounter with plaintiff, and had no idea what plaintiff's religious practices were.  (Ricci Dec., ¶15.)

10  In his opposition, plaintiff contends that prior to his placement on an upper bunk, he met defendant

11  during 4:00 p.m. count, at which time defendant noticed plaintiff had drawings of Islamic symbols

12  on the cell walls, and told plaintiff to remove them and that he did not like Muslims.  (Garrett Dec.,

13  ¶5, 18; Opp., Fact 17.)

14          Plaintiff has not met his burden of demonstrating the existence of any material factual

15  disputes.  It is undisputed that at the time of the bunk move, plaintiff did not have a medical chrono

16  for a lower bunk but the incoming inmate did, and that defendant was not responsible for assigning

17  the new inmate to the lower bunk.  Plaintiff has not submitted any evidence that would support a

18  claim that defendant intentionally discriminated against him on the basis of his religion by moving

19  him to an upper bunk.  Assuming as true that defendant previously ordered plaintiff to remove

20  drawings of Islamic symbols and told plaintiff he did not like Muslims, plaintiff has not submitted

21  any evidence linking the bunk move to defendant's religious prejudice against plaintiff.  Plaintiff's

22  conclusion that defendant discriminated against him is insufficient to raise a triable issue of fact.

23  Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim that defendant

24  discriminated against him on the basis of his religion, in violation of the Equal Protection Clause.

25          F.    Conclusion

26          Based on the foregoing, it is HEREBY RECOMMENDED that defendant's motion for

27  summary judgment, filed February 6, 2006, be GRANTED IN PART AND DENIED IN PART as

28  follows:

1.     Defendant's motion for summary adjudication on plaintiff's Eighth Amendment conditions-of-confinement claim against him be DENIED; and

2.      Defendant's motion for summary adjudication on plaintiff's Fourteenth Amendment equal protection claim be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     June 2, 2006**              _____**/s/ Sandra M. Snyder**_____
icido3                                   UNITED STATES MAGISTRATE JUDGE